Before we begin our arguments this morning, we have a little pleasant business to perform which requires Judge Prost to take over the presiding seat. I'm happy to do that and then recognize you, Judge Rader, Chief Judge Rader. I'm going to make a motion on behalf of Bill Raich, not just my clerk. Bill has the distinction of serving two judges in this court. He served me for nine months almost and spent the remainder of his time with our magnificent new colleague, Circuit Judge Raina. I'm sure that both Judge Raina and I would say that, and will say in the future, that we're talking about one of the best clerks we ever had. I move his admission. He's a member in good standing of both the District of Columbia and Virginia bars. He's going to be a magnificent contribution to our bar. With great pleasure, the motion is granted. Would you administer the oath, Ms. Twyford? I will. Now you've got more obligations, Bill. Go to work. Our first case this morning is GPS Industries v. ALTEX. Ms. Dawson. May it please the court. Your honors, we are here today because the district court disregarded several critical pre-complaint agreements, misapplied this court's standing of precedence, focused its inquiry on one agreement and one agreement only, and altogether ignored the party's intent as well as the substance of that agreement. Where in the record does OGSI assign the patent to GPSI? Well, your honor, if you're looking for an assignment, we can look to the patent enforcement cooperation agreement. But at this point, because OGSI merged into GPS Industries shortly before the case was dismissed, this case is not about credential standing. It's not about a Category 1 plaintiff. We're looking only for constitutional injury in fact. And so all we the defendant's infringing acts. And what we need to look for is whether they have exclusive rights in the patent. Do we look at this jurisdictional issue at the time of filing? You seem to suggest that subsequent activities may have conferred on you standing. Can we do that? No, we're asked, no, the constitutional standing needs to be determined at the time of filing. At the time of filing, we need to actually have a written evidence of being the patent owner or the exclusive licensee. Do we have that here? Well, the Waymark case, your honor, indicates that an oral license is sufficient to convey an exclusive license. But we do have writings, we have numerous writings, all the way up to the 2007 patent enforcement cooperation agreement. That occurred just prior to the May 2007 complaint. So if I can draw the court's attention to that document, that starts at in the appendix at 82238. Well, as you get into that, can I ask you, the appendix was marked confidential here, including I guess all the documents that are included. But you cite in your non-confidential briefs portions of those agreements. So I didn't quite know what to make of, I mean, all the agreements that you alluded to, and I think you're about to allude to, are marked confidential. At this point, your honor, because of the bankruptcy proceeding that occurred after the notice, after the appeal was docketed, most of the, all of these documents are non-confidential at this point. So there's no, there's no misunderstanding. Everything can be referred to openly. Sure, please take us where you wanted to take us. At, it begins at 82238, your honor, but the provisions, the specific provisions that I'd like to draw the court's attention to begin on 82240. It's a redacted version of the patent cooperation agreement that was signed by all of the three critical parties just prior to the complaint being filed. There's only three at that point. We have OGSI, who continued to maintain the title in the patent, and then we have the two plaintiffs, the We have the parties agreeing that GPSI shall have the sole right, but not the obligation to pursue claims, claims being a defined term that's defined in the, on the previous page, using common counsel against accused infringers based on the manufacturer, use, sale, offer for sale, and or importation of cart-based products. If we go down to paragraph 2.4, we see the optimal IP holdings holds the rights, similar exclusive rights, but in the handheld device field of use. As I mentioned, claim is a defined term. The parties defined claim to mean each effort to license or sell the patent to an accused infringer and or to seek cessation of further infringement, including the pursuit of one or more legal actions, and it goes on to say that they are entitled to the... This does seem to suggest that something happened, but where's the evidence that it did happen? Where's the evidence that there is a conveyance of the patent to GPSI? This is an agreement between the three parties. The Minco case, your honors, Minco v. Combustion Engineering indicates that there's no magic words necessary for conveyance. This is the party's agreement. OGSI signs this agreement. The parties agree that... It happens often in the law that people purport to convey things that they don't have. Unless you can show us where OGSI assigned the patent to GPSI, then they didn't have anything to convey on. Well, I think your honor is getting the documents. I may well, but you're going to have to show me somewhere where GPSI acquires this patent, or the exclusive right to enforce it. What the district court focused on, and I think what your honor is focusing on, is the district court looked at those single agreements, the November 19, 2004 stock purchase agreement. The district court completely ignored this agreement, which was signed by the title owner, OGSI. The memorandum opinion doesn't even talk about this agreement at all. It completely ignored it. Are you arguing that this agreement standing alone, just giving the right to bring suit would be enough? This agreement standing alone at least shows that they had all of the bundle of sticks to exclude these defendants and everyone else after this agreement was signed by all three parties. OGSI agreed that these two plaintiffs had the entire bundle of sticks. Well, when you say entire bundle of sticks, this agreement is the right to bring suit. Are you saying that the right to bring suit is enough? Not just the right to bring suit, the entire right to exclude, including the right to license and settle. The claim, like I mentioned, is a defined term in paragraph 1.9. This is no more than the Patent Act grants a patentee when a patent is issued. It grants the patentee and assigns the right to exclude others. My read of this agreement and other portions of the agreement sort of cut against you rather than for you. If you look at 2238, the whereas clauses, I mean, whereas OGSI is a sole and exclusive owner of the patent. And then it goes on to say, whereas through its subsidiary OGSI, GPSI owns the exclusive right to take action. I mean, it seems to reaffirm that the OGSI is the exclusive owner and maybe a mistaken belief that you had that by purchasing all the stock and having a wholly owned subsidiary, that would automatically give rights to GPS that it didn't have. Well, no, Your Honor. If we just focus on the November 19th transaction, what the parties intended to accomplish... Wait, is that this 2007? That's not the 2007, is it 2004? That's what I think the court is focused on because the district court focused completely on the November 19th. And that does establish that the parties at least, that GPS Industries Inc. at least had the rights to grant the license to optimal IP holdings. That was a condition of close... No, but I was just referring you to the 2007 agreement. And the parties consistently all throughout all of the agreements referred to OGSI as the owner. And then it was in fact the owner. There was no complete assignment of the patent. If you went to the abstract of title and looked it up at the 093 patent, you would see that OGSI was the owner of the patent. The question is not who was the owner of the patent, the question is who held the exclusive rights of the patent and what we can see by the patent enforcement. These are the recitals, Your Honor, on the first page. That's what the parties understand. Where is the exclusive right given to GPSI? The exclusive rights are given, first of all, dating all the way back to the first agreement, the November 19th, 2004 agreement, GPS Industries at least had the exclusive rights to grant the license to optimal IP holding. We know that because that was a condition of closing. The inventors were selling the exclusive rights in the cart-mounted field of use to GPS Industries, Inc., but it was to retain for itself all the rights in the handheld field of use. If you read out the entire patent license agreement, the transaction makes no sense, Your Honors. That was a condition of closing. They were not selling the entire patent. They were selling only the rights in the cart-mounted field. If you want us to rely on the patent license agreement, that's a document that OGSI was not a party to. The patent license agreement was, the OGSI was a party to that agreement, and that's why I draw the court's attention to that document in the first instance. No, OGSI was not a party to that agreement. The patent license agreement, excuse me, the patent enforcement cooperation agreement, it was, but not the patent license agreement, and that's consistent with what the parties did not believe that OGSI had the rights to grant the license. They believed that GPS Industries, Inc. had the rights to grant the license, and that's why that was the only entity that signed that agreement along with Optimal IP Holdings. Let me ask you a question. There were two patent license agreements that were entered into on November 19, 2004. One was the one that you're referring to. The other is the European license agreement. In the European one, there was actually a mention, a reference to GPSI affiliates. Why was that reference not included in the patent license agreement? That concerned any applications, a Canadian application that's not relevant to the 093 patent. That was just another indication that during this transaction, GPS Industries acquired additional rights other than just the stock in OGSI. It wasn't about buying the stock in OGSI. OGSI held a couple of patents and a patent application. It was about acquiring the rights in the cart-mounted field of use, and the inventors would have never sold the rights in that for that sum of money. They retained, the condition of closing was that they were to retain the handheld field of use, the exclusive rights in that. Are you arguing that the patent license agreement is incorporated by reference? Yes, it is incorporated by reference, in paragraph 11.2, it's made a condition of closing, your honor. Paragraph 11.2 of the stock purchase agreement is on page, in the appendix at 2156. At closing, purchaser shall deliver or cause to be delivered to sellers, and if we look down to letter E, the U.S. license agreement in the form attached here exhibit C, which was the patent license agreement, your honor. If the one document's incorporated into the other, and your argument is that we're supposed to interpret them as part of a single transaction, why are they supposed to be then interpreted under the laws of different states? They're interpreted under the law of Texas, the state of Texas. No, they're not. One's under Delaware law. I believe the stock purchase agreement, the parties agreed that Texas law shall... Right, but the patent license agreement is under Delaware law. Ms. Dawson, even if the patent license agreement is incorporated by reference, all it states is that GPSI is transferring rights to Optimal. It says nothing about OGSI vesting its rights in GPSI. In other words, it's back to your need to show us that GPSI had what it purported to transfer. Well, your honor, it's implicit. We're not looking for a virtual assignment. But that's the one thing, it can't be in our law, it can't be implicit. It has to be in writing. It has to be very, very, very openly clear, and I don't find any evidence. To rise to the level of a virtual assignment, as the district court concluded, but that was not the inquiry. The inquiry is whether they suffered constitutional injury in fact. And to determine that, we look only to whether they have exclusive rights in the patent such that they were injured by the defendant's acts. And we don't need a writing. Where is their exclusive right? Where is that conveyed to them? At least implicit in the November 19th 2004 agreement, but it's explicit in the 2007 patent enforcement cooperation agreement, which the district court completely disregarded. We see that all three parties, OGSI, the title holder, agreed that these two plaintiffs would have the rights to exclude all infringers and to enter into license agreements. OGSI retained nothing except the bare title. What law are we to apply in assessing whether or not there's been an effective transfer of exclusive rights? We don't need to look for magic words of, I convey to you. The court has never required. Are we looking under Texas law, federal circuit law, Delaware law? What law are we applying here? Well, in the case of the patent enforcement cooperation agreement, I believe that is also under the Texas law, but we look to the intent. I mean, this court has said repeatedly in every case, we have to look at the intent, the substance of the agreement. Well, if you're looking at what this court has said, then you would apply, you're applying federal circuit law. Yes, quite clearly. Yes. I mean, it's a combination. The court has consistently said it's not about what the parties label it. Of course, it was labeled a stock purchase agreement, but that was not what the substance of the agreement meant to accomplish. The parties intended to put in GPS Industries Inc.'s hands, the cart-mounted field of use, and retain in the inventor's hands, the handheld field of use. That was the intent. But the patent enforcement cooperation agreement is only conveying the right to sue, and that's not enough. It's our PROPAT case that's made that clear that the right to sue is not enough to convey standards. It's not just the right to sue, Your Honor. It's the right to exclude all infringers, and that's what the Patent Act gives you. It gives them the right to, and PROPAT was not similar to this case. PROPAT was actually an agency relationship where they were granted the right to decide who to sue. This is not the decision who to sue. This is the actual right. All of the bundle of sticks are held in these two plaintiffs. This is completely distinguishable from PROPAT, Your Honor. They were not granted the mere decision to sue. OGSI did not retain the rights to decide if that was the party to sue or not, and they did not retain any to receive any litigation damages or anything to that extent. The only thing that OGSI retained was the mere nominal title, and I asked the court to refer to the 2007 patent enforcement enforcement cooperation agreement to find the exclusive rights in these plaintiffs. Could we perhaps hear from your colleague? We'll restore your full rebuttal time. Would you give Mr. Fisher an extra three minutes if he needs to use them? Thank you, Your Honor. You may proceed. May it please the court. The district court dismissed this case because it correctly held that neither GPSI nor Optimal had standing to bring this lawsuit at the time they filed their complaint on May 11, 2007. In 1995, the inventors assigned the 093 patent to Optimal Recreation Solutions, which in turn sold and assigned the patent to OGSI in 2002. As the district court recognized, that is where the chain of title to the 093 patent ended as of the filing date of the the failure just to suffer constitutional injury and the absence of an analysis as to whether or not they suffered a constitutional injury in fact. What is your response to that as to why that inquiry was not required? There is no constitutional injury because the named plaintiffs had no rights whatsoever. There was no injury there. The OGSI, who's a non-party, held all rights and never gave any away. So you think implicitly or even explicitly the district court did analyze that fact? The district court absolutely analyzed it and traced the chain of title. He, uh, or it recognized that, um, there was language in some of these agreements implying that rights might be there but then he went on, this is on page 83 in the appendix, to say those rights have never been So in 2004, Appellant GPSI purchased the stock of OGSI, but it did not purchase the 093 patent, which is an asset of OGSI. After its stock was purchased, OGSI continued to exist. If the license agreement in 2004 were in fact part and parcel of the other agreement, would your argument be different? No, because the patent license agreement conveys rights from GPSI to Optimal and GPSI had no rights to convey. But if the one is incorporated into the other, isn't then the assumption that all parties are parties to the entirety of the transaction? I think there still has to be the conveyance from OGSI has to convey its rights to GPSI, it's a chain of title, and then from GPSI to Optimal, aside from the choice of law in the two different agreements. I think it was clear what the parties had intended to do was to keep the patent with OGSI and then to have other transactions, and I think it was based on a mistake that they believe that owning the stock of OGSI empowered them to grant rights, empowered GPSI to grant rights that they did not have. We don't know that, that's, you know, your interpretation. That's an interpretation, yes. What about the 2007 agreement? I mean, your opponent argues that that can stand on its own because of the definition of claim being much broader than simply the right to sue. I think the 2007 agreement, as you suggest, was an agreement for how to file lawsuits on the patent. There is no conveyance of any rights from OGSI to either party in that agreement, and the agreement includes a very strong merger clause that says this is the entire understanding of the parties. But it does define claim as including the right to license and the right to sell. Why wouldn't that be broader than simply the right to sue? Those rights to, um, those exclusive rights were never granted, and the exclusive rights needs to be a grant of the right to practice, plus a promise to not grant that right to others. That right was never granted, so there was never an exclusive license here, and certainly not an assignment or a virtual assignment of the O93 patent. And the district court recognizes that none of the agreements that appellants rely on include any grant of any right under the O93 patent from OGSI, who held all the rights. This was fatal to GPSI's and optimal standing because neither had obtained any rights from OGSI, and only OGSI had those that GPSI had rights under the O93 patent by virtue of owning OGSI stock. For example, in the 2007 patent enforcement cooperation agreement, there's a recital that states that through its subsidiary, OGSI, GPSI owns the exclusive rights. Did OGSI have the right to assign or to license other people continuously? OGSI had all rights because it never conveyed any rights. So it could have licensed another 10, 15, 30 parties? Yes. Meaning GPSI is not even an exclusive licensee? GPSI was never granted an exclusive license by OGSI, so there's no document or conveyance to look at there to see if there was exclusionary rights. And one of the chief reasons for our an interest not represented in the litigation, right? That's right. So there's potential that Skyhawk and the other defendants could be subject to a lawsuit from OGSI or other unnamed parties. Is it your view that federal circuit law applies to the construction of these agreements or interpretation of these agreements, or is it state law? I think state law applies to the interpretation of the agreements and then as to what those agreements mean, federal circuit law applies to determine whether they're standing. How do you draw a line between those two? Interpretation and meaning seem to be the same thing to me. For example, the impact of a merger clause on an agreement I think would be a state law issue, whereas if it was determined that that agreement did not convey rights, then the federal circuit of law would apply to the fact that rights had not been conveyed and standing would fail. So the question of conveyance of rights is a question of federal circuit law? Yes, because it's conveyance of rights in a patent. I think that would rise to federal circuit law. I'm still having trouble figuring out why if the merger clause has some question of federal law. I'm not sure about that. Maybe it would be as to a standing analysis, the impact of the merger clause to the standing of the parties would be federal circuit law. The fact that a non-party OGSI held all the rights to the 093 patent when the lawsuit was filed should end the inquiry. Standing is determined at the inception of the lawsuit and cannot be cured. Appellants have raised an argument as a fallback asking the court to find that they suffered only a prudential standing defect, meaning that they were an exclusive licensee, but OGSI did not grant appellants any rights, let alone an exclusive license that would be required for them to get constitutional standing. Appellants suffered a constitutional standing defect here and that cannot be cured. Appellants also argue that the parties intended for GPSI to be an exclusive licensee, but there's no evidence of any grant whatsoever before the complaint was filed. None of the agreements included a grant from OGSI to anyone and then there is no evidence in the record of an oral conveyance. So your view is intent doesn't matter? The intent does not matter. There's nothing to support the intent. In addition to the fact that the merger clause would render any such grant ineffective because it would be outside the written agreement. To the extent that the appellants are arguing that we should look at the intent of the parties to make this grant, I think that the 2007 patent enforcement agreement in the merger clause shows that the parties did not intend to have their agreements rewritten beyond what was in the written documents. So plaintiffs never received any rights under the 093 patent from OGSI, oral or written, license or assignment. Therefore, the District Court correctly held that the plaintiff suffered a constitutional standing defect which cannot be cured. District Court's judgment dismissing the case for lack of subject matter jurisdiction should be affirmed. I would like to just briefly talk on the cost issue. Appellants have appealed the assessment of top costs by the District Court. Under 28 U.S.C. 1919, the District Court has a discretion to assess costs when it dismisses a suit for wanted jurisdiction. The District Court acted within its sound discretion in doing so. Appellants argued here that Skyhawk is not entitled to cost because it was not a prevailing party as provided for in Federal Rule of Civil Procedure 54D, but 54D does not control here. It's 28 U.S.C. section 1919. The judge didn't say what was controlling, did he? He did not. He simply granted costs without assessing what law he was operating under? That's right. I think the law that for this situation, it would always be 28 U.S.C. section 1919 which expressly provides for assessing costs for dismissing a case for wanted jurisdiction. So we're asking that deference be given to the District Court's decision to assess costs in this case. Unless there are further questions. Thank you, Mr. Fisher. Ms. Dawson, you have your full rebuttal time. Just a couple of points, Your Honor. We're not looking for a conveyance. We're not looking for We're not looking for, we don't need magic words for that. We can, exclusive licenses can be oral, implied, or written. We don't, by the party's actions, we can see that all of the exclusive rights to exclude all others were placed in these two plaintiffs' hands. Whether there were some defect in the way that they wrote the recitals on the first page or not, the parties intended that these two plaintiffs would have the exclusive rights to exclude anyone. OGSI retained nothing. So this case is even more clear than the court's previous precedence on standing where the court has found Category 1 plaintiffs such as Valpo where Valpo retained numerous rights. It retained rights to veto a sublicense. OGSI retained nothing and we can see that in the writing reflected by the 2007 Patent Enforcement Cooperation Agreement. To the extent there's any ambiguity at all as to what the recitals meant, the parties did in fact record a confirmation of ownership document where they recited what they intended by all of these documents and that was the confirmation of ownership document, Your Honors, and the district court again looked at two post-complaint documents but it ignored the confirmation of intended by these pre-complaint agreements. The district court looked only to whether this post-complaint filing amounted to a virtual assignment and again applied ENZO. Well, ENZO was a Category 1 case and didn't look to see whether the oral license in ENZO could have amounted to convey exclusive rights such that they were injured by the defendant's infringing acts. So, Your Honors, I would ask the court to look beyond ENZO, look beyond the fact of what the district court did. Go and look at the other agreements that were in the record. There's plenty of evidence of the party's intent such that to the extent that that was not clear, the parties did agree to that OGSI was the nominal title holder and that GPS Industries Inc. held the exclusive rights in the cart-mounted field and that OGSI Optimal IP Holdings held the exclusive hand-held field and that that's all we need to find in this instance because again OGSI merged into GPS Industries shortly before the case was dismissed. So, there was no prudential concerns. The only issue is whether there was constitutional standing at the time the complaint was filed. Thank you, Your Honors. Thank you, Ms.